**OHIO CIVIL RIGHTS COMMISSION, Appellee,**

v.

**FIRST AMERICAN PROPERTIES, INC., d.b.a. Constance Agne, D.O. and Associates; Fryman, Appellant.**

[Cite as *Ohio Civ. Rights Comm. v. First Am. Properties, Inc.* (1996), 113 Ohio App.3d 233.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15646.

Decided Aug. 2, 1996.

---

*Betty D. Montgomery*, Attorney General, and *Duffy Jamieson*, Assistant Attorney General, Civil Rights Section, for appellee.

*Jeffrey M. Silverstein & Associates, Jeffrey M. Silverstein* and *William H. Prophater, Jr.*, for appellant.

FREDERICK N. YOUNG, Judge.

Richard J. Fryman appeals the trial court's denial of his motion to vacate judgment.

## I

Fryman was the president of First American Properties ("First American"), a company allegedly doing business as Constance Agne, D.O. & Associates. First American was a real estate management company which handled the administrative, personnel, and payroll services for Constance Agne, D.O. & Associates. Fryman is the husband of Dr. Constance Agne.

Laurie Miller, appellee, was an employee of Constance Agne, D.O. & Associates. First American terminated her employment with Constance Agne, D.O. & Associates on December 11, 1990. Thereafter, on March 30, 1991, Miller filed a discrimination charge with the Ohio Civil Rights Commission ("OCRC"), alleging that First American had terminated her employment because of her pregnancy. The OCRC conducted a preliminary investigation of Miller's claim and determined that it was probable that First American had engaged in unlawful discriminatory conduct.

The OCRC made the following findings of fact. Miller was employed on April 18, 1988, as a psychology assistant to Constance Agne. Miller's employment contract provided that she would receive health care coverage. In mid-July of 1990, Miller informed Fryman that she was pregnant and requested that she be permitted to reduce her work hours to thirty-two hours per week after her maternity leave. On September 20, 1990, Miller discovered that her health care insurance had been canceled due to First American's failure to pay her premiums. Miller then attempted to contact Fryman, but was not successful until October 5, 1990. During their ensuing conversation, Fryman assured Miller that he would apply to have her insurance reinstated. Fryman did so, but the application for reinstatement was denied on October 23, 1990, apparently because of her pregnancy. The other employees had their insurance reinstated.

On October 24, 1990, Fryman wrote Miller a letter granting what he said was her request to begin part-time hours immediately, even though she had allegedly requested to have her hours reduced only after her maternity leave. Fryman then rescheduled Miller's hours accordingly. On November 6, 1990, Fryman wrote Miller a letter in which he stated that he was placing her on disciplinary leave for an alleged time card discrepancy. Following that letter, Fryman met with Miller on several occasions on which he attempted to reduce Miller's accrued benefits and to get her to drop the insurance issue. Miller refused to do either.

On December 11, 1990, Fryman told Miller that she would be terminated for, among other reasons, her continued refusal to address accountability issues with her time. Fryman gave Miller several options with respect to her termination: (1) that Miller continue working until after her maternity leave, (2) that Miller be paid severance of $2,500, or (3) a combination of the first two options. Fryman also informed Miller that these options were conditioned upon her dropping the insurance issue. Miller responded that the condition was unacceptable, and then Fryman terminated her employment without any renumeration for her accrued benefits.

After Miller filed her discrimination claim, the OCRC attempted to settle her dispute with Fryman and First American, but was unsuccessful. Consequently, on March 12, 1992, the OCRC filed a formal complaint against First American d.b.a. Constance Agne, D.O. & Associates. The matter was then referred to the Ohio Attorney General's Office for prosecution.

First American answered the complaint on March 20, 1992. Afterward, the OCRC attempted to depose Fryman, but he did not appear for the deposition. Fryman alleged that he failed to appear because First American's counsel had withdrawn from representation, and it had yet to retain new counsel. The hearing was then continued until September 2, 1992, because discovery was not proceeding in a timely fashion. During the interim, Fryman, as the president and representative of First American, corresponded and had telephone conversations with the OCRC. In those conversations, he claimed that the OCRC did not have jurisdiction over the matter because First American had fewer than four employees. On September 1, 1992, Fryman allegedly called the OCRC to reschedule the September 2, 1992 hearing date because he would be unable to attend. The hearing was then continued until October 13, 1992. Thereafter, the OCRC was granted a continuance which further postponed the trial until October 15, 1992.

The hearing was held on October 15, 1992; however, First American and Fryman failed to appear. After considering the evidence, the hearing examiner recommended that the OCRC order First American to cease and desist from all unlawful discriminatory conduct. The OCRC adopted the hearing examiner's recommendation and issued a cease and desist order on March 13, 1993.

First American neglected to appeal the OCRC's final order, and after the time for an appeal expired, the OCRC filed a petition for decree of enforcement with the Montgomery County Common Pleas Court. In that petition, OCRC requested that Fryman be added as a defendant because First American's articles of incorporation had been canceled by the Secretary of State on December 30, 1988, due to its failure to pay franchise taxes. Fryman was then added as a defendant.

On December 16, 1993, the court issued a notice to the parties that Fryman and First American were in default because they had failed to answer or appear. On December 21, 1993, the OCRC filed a motion for default judgment against Fryman and First American. The court granted the motion on December 30, 1993. On May 24, 1994, the OCRC filed a motion to show cause why Fryman and First American should not be held to be in contempt of court. On July 12, 1994, Fryman and First American were held to be in contempt of court. On September 15, 1995, Fryman and First American filed a motion to vacate the default judgment of December 30, 1993. The trial court overruled the motion, and Fryman now brings this timely appeal.

## II

In his sole assignment of error, Fryman argues:

"The court of common pleas erred in denying appellants [*sic*] motion to vacate judgment when appellants offered unchallenged testimony and evidence that they did not receive actual notice of the proceedings against them, and appellee did not offer contradictory evidence."

Fryman asserts that the trial court erred in not granting him relief from judgment, because he presented an affidavit in which he attested that he never actually received service of process. He argues that although the OCRC satisfied the Civil Rules, his affidavit rebutted the presumption of perfected service of process and placed the burden on the OCRC to prove actual service of process. Fryman contends that OCRC failed to meet this burden of proof and, therefore, that the trial court abused its discretion in not granting his motion.

We find no merit in Fryman's argument. Civ.R. 4.1 outlines the methods of obtaining service of process within this state. It provides that "service of any process shall be by certified mail unless otherwise permitted by these rules." Civ.R. 4.1(1). Service is perfected by certified mail when it is sent to an address that is reasonably calculated to cause service to reach the defendant. *Regional Airport Auth. v. Swinehart* (1980), 62 Ohio St.2d 403, 16 O.O.3d 436, 406 N.E.2d 811. Proper service of process is "[e]videnced by a return receipt signed by *any person*." (Emphasis added.) Civ.R. 4.1(1). Valid service of process is presumed when the envelope is received by any person at the defendant's residence; the recipient need not be an agent of the defendant. *Branscom v. Birtcher* (1988), 55 Ohio App.3d 242, 244, 563 N.E.2d 731, 733; *Fancher v. Fancher* (1982), 8 Ohio App.3d 79, 8 OBR 111, 455 N.E.2d 1344, paragraph one of the syllabus.

The courts are apparently split as to the effect of a defendant's affidavit that, although the Civil Rules were complied with, he or she never actually received service of process. Some courts have relied on *Rafalski v. Oates* (1984), 17 Ohio

App.3d 65, 17 OBR 120, 477 N.E.2d 1212, and *Grant v. Ivy* (1980), 69 Ohio App.2d 40, 23 O.O.3d 34, 429 N.E.2d 1188, for the proposition that an uncontradicted affidavit, alone, is sufficient to require a default judgment to be found void *ab initio*. *E.g., Nationwide Ins. Co. v. Mahn* (1987), 36 Ohio App.3d 251, 522 N.E.2d 1096. The rationale for this position is that there is a preference for cases to be decided on their merits when possible.

This court in *Sec. Natl. Bank & Trust Co. v. Murphy* (July 20, 1989), Clark App. No. 2552, unreported, 1989 WL 80954, and several other courts, however, have held that *Rafalski* and *Grant, supra,* are distinguishable from cases like the present one because, in *Rafalski* and *Grant,* service of process was sent to an address other than the defendant's. In *Murphy,* we distinguished instances where service was sent to an incorrect address, because, in that case, "the fact that the service of process has been sent to an incorrect address is strong corroboration of the defendant's otherwise unsupported and obviously self-serving testimony that he did not receive service of process."

We further concluded that when process was sent to a correct address, and the defendant has only his self-serving testimony that he did not receive service of process, the trial court is not required to find that the presumption of service of process has been satisfactorily rebutted. We determined that the trial court must still hold an evidentiary hearing on the matter, but the trial court may properly find that the defendant's testimony that he did not receive service of process is not credible.

The Sixth Appellate District reached the same result in *United Home Fed. v. Rhonehouse* (1991), 76 Ohio App.3d 115, 125, 601 N.E.2d 138, 144. In that case, the court determined that "[w]hile some cases hold that an uncontroverted affidavit is sufficient to require the default judgment to be found void *ab initio,* these holdings do not prohibit the trial court from assessing competency and credibility." With that in mind, the court affirmed the trial court's holding that the appellant's affidavit was not credible in light of the evidence.

Likewise, the Tenth Appellate District recently stated in *Taris v. Jordan* (Feb. 20, 1996), Franklin App. No. 95APE08–1075, unreported, 1996 WL 69717, that "[w]hile *Rafalski* suggests that an uncontroverted affidavit is in itself sufficient to require that a default judgment be found void *ab initio,* other decisions suggest that the trial court must assess competency and credibility of the affiant and determine whether sufficient evidence of non-service was presented." The court went on to adopt the latter position. The court reasoned that it could take into account the credibility of the affiant and whether there was sufficient proof of nonservice, because, otherwise, the only evidence that could contradict a defendant's affidavit would be proof of actual service, which would in effect eliminate all means of serving process other than personal service.

Turning to the present case, we find that when it is undisputed that certified mail was delivered to the correct address and that someone at the address accepted the mail, a defendant's affidavit in which he attests that he did not actually receive the process does not necessarily rebut the presumption of valid service. The trial court must hold a hearing on the matter, and the court may properly deny a motion for relief from judgment on the grounds that it does not find the defendant's testimony credible and that there is insufficient evidence of nonservice. Actual service need not be proved to contradict the affidavit.

The trial court in the present case did hold an evidentiary hearing on this matter. In the hearing, the OCRC presented evidence that service of process was sent by certified mail to Fryman's residence and that someone at the residence signed for it. Additionally, the OCRC put forth evidence, a signed receipt, demonstrating that it also sent service of process by certified mail to the office of Constance Agne. Fryman testified that he received mail at that address and that his mail was set aside in a special box for him there.

Moreover, the OCRC presented correspondence from Fryman that indicated that he was aware of the hearing. In one of the letters, Fryman wrote, "Please * * * send me a copy of all the files, reports, and evidence and testimony he wants to bring to the hearing—I would like a complete copy of all the info he has." The OCRC also put on witnesses who testified that Fryman indicated to them in telephone conversations that he was aware of the hearing. Based in part on that evidence, the trial court found that Fryman's testimony—that he never actually received service of process—was not credible or supported by the evidence.

We find that there was sufficient evidence from which the trial court could have concluded that Fryman's affidavit was not credible. Given that credibility determinations are particularly within the province of the trial court, *Dayton v. Versic* (Mar. 15, 1996), Montgomery App. No. 15223, unreported, 1996 WL 111793; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276; *State v. Evans* (1993), 67 Ohio St.3d 405, 410–411, 618 N.E.2d 162, 167–168; *Anderson v. Bessemer* (1985), 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528, we hold that the trial court did not abuse its discretion denying Fryman's motion for relief from judgment. Accordingly, we overrule this assignment of error.

*Judgment affirmed.*

BROGAN and WOLFF, JJ., concur.