ELECTRONIC CITATION:  2002 FED App. 0004P (6th Cir.)
File Name:  02b0004p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: MARK J. SWEENEY, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| CRAIG SILL and LISA SILL, | ) |
| | ) |
| Plaintiffs-Appellees, | ) |
| | ) |
| v. | )      No. 01-8030 |
| | ) |
| MARK J. SWEENEY, | ) |
| | ) |
| Defendant-Appellant. | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division
No. 00-11738, Adv. No.  00-1384.

Argued: March 6, 2002

Decided and Filed: April 22, 2002

Before: BROWN, COOK, and HOWARD,  Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED**: Thomas C. Pavlik, NOVAK, ROBENALT, PAVLIK & SCHARF, Cleveland, Ohio, for Appellant.  David A. Corrado, Cleveland, Ohio, for Appellees. **ON BRIEF:**  Thomas C. Pavlik, Kimberly A. Coleman, NOVAK, ROBENALT, PAVLIK & SCHARF, Cleveland, Ohio, for Appellant.  David A. Corrado, Cleveland, Ohio, Steven Davis, RABB & DAVIS CO. LPA, Cleveland, Ohio, for Appellees.

_____

**OPINION**

_____

JOHN C. COOK, Bankruptcy Appellate Panel Judge.  This case is before the Panel on appeal from a decision of the bankruptcy court granting summary judgment to the Plaintiffs in their adversary action to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2).  For the reasons that follow we **REVERSE** and **REMAND** the case for further proceedings.

## I. ISSUES ON APPEAL

There are three legal issues raised by the parties in this case:

(1)  Did the Debtor have a full and fair opportunity to litigate the claims against him in the state court action?

(2)  Was the claim of fraud against the Debtor actually and directly litigated in the state court?

(3)  Does the *Rooker-Feldman* doctrine apply such that the discharging of the debt in question would amount to a review and overruling of the state court's decision?

## II. JURISDICTION AND SCOPE OF REVIEW

We have jurisdiction over appeals from the final orders of the bankruptcy court pursuant to 28 U.S.C. §158(a)(1) and the consent of the Northern District of Ohio.

A grant of summary judgment is reviewed de novo.  *Investors Credit Corp. v. Batie (In re Batie),* 995 F.2d 85, 88-89 (6th Cir. 1993); *Myers v. IRS (In re Myers),* 216 B.R. 402 (B.A.P. 6th Cir. 1998), aff'd 196 F.3d 622 (6th Cir. 1999).  All of the issues in this case are legal issues, and we review them de novo for that reason as well.  *Corzin v. Fordu (In re Fordu),* 209 B.R. 854, 857 (B.A.P. 6th Cir. 1997), aff'd 201 F. 3d 693 (6th Cir. 1999).

## III. FACTS

This is an appeal by the Defendant-Debtor, Mark Sweeney, from an order of the bankruptcy court granting summary judgment in favor of Plaintiffs Craig and Lisa Sill. Plaintiffs brought an adversary action under 11 U.S.C. § 523(a)(2)(A) against the Debtor alleging the nondischargeability of a judgment debt owed them as a result of a lawsuit they had brought in the courts of Ohio. The bankruptcy court, applying principles of collateral estoppel and the *Rooker-Feldman* doctrine, granted summary judgment in favor of the Plaintiffs.

The state court litigation had its origins in a contract for the construction of a home which called for the Debtor to sell the Plaintiffs a lot and build a house on it. Plaintiffs contended that the Debtor represented to them that the lot they were buying would eventually find itself in a subdivision congenial to the rearing of children. In the event, according to Plaintiffs' allegations, no subdivision accompanied the construction of their home, they were thus without suitable neighbors, and numerous major construction defects diminished further the value of their investment.

Service of process was by certified mail at one of the Debtor's business addresses, and the return receipt was signed by an employee of the business, but the Debtor did not answer the Plaintiffs' lawsuit in the Ohio courts, and in due course the Plaintiffs took a default judgment against him. At a hearing on the default judgment, the Plaintiffs presented three witnesses, including an architect, to establish the construction deficiencies in their home. The Plaintiffs also testified that the Debtor had misled them into believing that their home would eventually find itself within a subdivision. At the close of the hearing, which is transcribed and occupies 57 pages of transcript, the Ohio court awarded Plaintiffs a judgment against the Debtor and two codefendants, jointly and severally, and against the Debtor, individually, in the sum of $197,000, $100,000 of which was for punitive damages flowing from the matters alleged in count 2 of their complaint, the fraud count. The court did not actually make a finding of fraud, but in a preamble to its announcement of the damages awarded it stated: "Based upon the evidence, the court is satisfied that judgment should be rendered in favor of the plaintiffs. . . ." It then simply listed the damages count by count of the complaint without reciting any findings of fact or conclusions of law.

3

Thereafter, the Debtor sought relief in bankruptcy court under Chapter 13 of the Bankruptcy Code and later converted his case to a case under Chapter 7. Following conversion of the case, the Plaintiffs duly filed their complaint objecting to dischargeability of their claim. The Plaintiffs then moved for summary judgment, offering the Ohio default judgment for its collateral estoppel (issue preclusive) effect and arguing that the Ohio courts had already determined that the Debtor was guilty of such fraud as would bar the discharge of their debt. The bankruptcy court gave the judgment full collateral estoppel effect, finding that the service of process by certified mail gave the Debtor a full and fair opportunity to litigate his case in state court and that the Plaintiffs had submitted to the state court admissible evidence from which it had made findings of fact and conclusions of law sufficiently detailed to support the application of collateral estoppel. It also held that the *Rooker-Feldman* doctrine, which generally prohibits lower federal courts from reviewing the decisions of state courts, applied in this case and prohibited the bankruptcy court from "setting aside the state court judgment." After thus applying both the collateral estoppel and *Rooker-Feldman* doctrines, the bankruptcy court granted Plaintiffs' motion for summary judgment and denied the Debtor a discharge with respect to the Plaintiffs' claim for $25,000 in compensatory and $100,000 in punitive damages. The Debtor timely appeals.

## IV. DISCUSSION
### (A) Fair Opportunity to Litigate

The Debtor first argues that the bankruptcy court erred in giving the state judgment preclusive effect, contending that the Debtor did not have a full and fair opportunity to litigate in the state court because he was completely ignorant of the litigation. The full faith and credit principles of 28 U.S.C. § 1738 require us to look to state law to determine whether the Ohio courts would give preclusive effect to the judgment in question, *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir. 1999), and in so doing, we find that there are four prerequisites to the application of collateral estoppel under Ohio law:

1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Gonzalez v. Moffitt (In re Moffitt),* 252 B.R. 916, 921 (B.A.P. 6th Cir. 2000) (quoting *Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 415-16 (Bankr. N.D. Ohio 1998)).

The Debtor's precise argument on this issue is that he was absolutely unaware of the state lawsuit and therefore had no opportunity to file an answer or to litigate the merits. In opposition to the Plaintiffs' motion for summary judgment, he filed an affidavit swearing that he had no knowledge of the litigation until after the default was entered, that the business address at which he was purportedly served was not an address at which "he normally worked," and that he "primarily worked" at another office in a different city in Ohio. The undisputed facts show that process was sent to the Debtor by certified mail, return receipt requested, which was delivered to the Commonwealth Land Title Agency Company, of which the debtor was a 60% owner, and was receipted for by an employee of that company. The bankruptcy court held that the Debtor had a full and fair opportunity to litigate the issues in the state action because service of process on him was proper under Ohio law, specifically Ohio R. Civ. P. 4.1, which provides for service by certified mail "[e]videnced by return receipt signed by any person." Since an employee of the Debtor's company receipted for the certified mail containing the process, the bankruptcy court considered the matter closed.

The courts of Ohio, however, make a distinction between certified mail service sent to a *residence* and such service sent to a *business* address. "The controlling case in Ohio regarding the sufficiency of certified mail service sent to a business address is the Supreme Court decision of *Akron-Canton Regional Airport Auth. v. Swinehart . . . .*" *Bell v. Midwestern Educ. Servs., Inc.,* 624 N.E.2d 196, 199 (Ohio Ct. App. 1993). In *Swinehart* the Ohio Supreme Court took the position that service must be "reasonably calculated" to reach interested parties in order to comport with the fundamentals of due process. The

5

court, however, indulged some suspicion that certified mail sent to a business address is the kind of service most likely to achieve a successful notification of the defendant. While approving certified mail service at a business address in principle, the court warned:

> This position does not reflect a relaxed adherence to due process rights. Indeed, we look suspiciously at any service attempted by means falling short of that most likely to achieve success. There are *inherently greater risks* involved in attempting certified mail service at a business rather than at a residence by virtue of the oftentimes numerous intermediate, and frequently uninterested, parties participating in the chain of delivery. The federal rule reflects the concern we should have in authorizing this type of service. We believe that the best course of action, however, is *not to entirely foreclose* service to individuals at their business address, but rather to examine each case upon its particular facts to determine if notice was reasonably calculated to reach the interested party.

*Akron-Canton Reg'l Airport Auth. v. Swinehart,* 406 N.E.2d 811, 814 (Ohio 1980) (emphasis added) (footnote omitted). The court went on to hold that the appellant in that case had *not* been properly served where certified mail service was directed to an office he used only two or three times per month, despite the fact that he was vice-president and a 50% owner of the business located there. In construing *Swinehart*, the Court of Appeals of Ohio, Second District, Montgomery County, reviewed all of the Ohio cases and drew the following conclusions:

> It is unnecessary to recite all of the cases which have followed the *Swinehart* decision. They all apply to varying factual situations. The key principle is that in order to justify service on a defendant at a business address, the party being served must have such a *habitual, continuous or highly continual and repeated physical presence* at the business address that the party ordering the service of process would have reasonable grounds to calculate that the service would promptly reach the party being served. The business address *should not simply be the address of the party's business*, it should be the address where the party himself has his own office, or at least where he is *continually and regularly physically present* most of the time. It is certainly not a question of ownership of either the premises or the company engaged in

6

> business at the premises. *Swinehart* proved that ownership is legally irrelevant to the issue.
>
> Nor is the control and overall management of the company doing business at the address to which service is directed of any legal significance.
> . . . .
>
> It is insignificant, also, that the appellees here were officers of the corporation. . . . *The key issue is the physical presence of the party being served at the business address.*

*Bell,* 624 N.E.2d at 202 (emphasis added).

Following *Bell*, another Ohio Court of Appeals held that an evidentiary hearing must be held when a party challenges the validity of certified mail service at his business address by a sworn affidavit in which he denies receipt of service of process and avers that he has limited contacts with the business location in question. *Rite Rug Co. v. Wilson*, 665 N.E.2d 260, 263 (Ohio Ct. App. 1995).

> Appellant claims that his *sworn affidavit* is uncontradicted and that, based upon this court's decisions in *Rogers* and *Mahn,* the default judgment should be vacated or an evidentiary hearing should be granted. This court has long held that, where a defendant files an uncontradicted sworn affidavit testifying that he never received service of process and that he did not receive mail at that address, the defendant is at least entitled to an evidentiary hearing.

*Id.* at 263. Indeed, even when certified mail service is sent to a defendant's *residence* address, a circumstance in which "[v]alid service of process is presumed," *Ohio Civil Rights Comm'n v. First Am. Props., Inc.,* 680 N.E.2d 725, 728 (Ohio Ct. App. 1996), an affidavit by the defendant that he has never received service requires the court to conduct an evidentiary hearing to determine the matter.

> We further concluded that when process was sent to a correct address, and the defendant has only his self-serving testimony that he did not receive service of process, the trial court is not required to find that the presumption of service of process has been satisfactorily rebutted. We determined that the trial court must still hold an evidentiary hearing on the matter. . . .

*Id.* at 728. Although the foregoing Ohio cases usually involved the vacation of default judgments, the due process concerns relevant to default judgments are essentially the same as those involved in the opportunity to litigate an issue before becoming the victim of a collateral estoppel as to it.

To prevail on their motion for summary judgment on the basis of collateral estoppel, the Plaintiffs had to show that the Debtor had a full and fair opportunity to litigate the issues raised by the Plaintiffs' lawsuit. The bankruptcy court concluded that the Plaintiffs carried this burden merely by proving that someone other than the Debtor had receipted for the certified mail delivery containing the process. It did not distinguish between business and residence service, and it ignored the Debtor's affidavit denying that he received service, averring that he did not normally work at the service address, and further averring that his usual office was elsewhere. In light of the Ohio service rules and the Debtor's affidavit, we must conclude that the Plaintiffs have not carried their burden of demonstrating there is no issue of material fact with respect to the service of process issue and that therefore they failed to establish as a matter of law that the Debtor had a full and fair opportunity to litigate in the state lawsuit. For this reason it was error to grant summary judgment on this issue.

### (B) "Actually Litigated"

The other contested element within the doctrine of collateral estoppel has to do with whether the issue sought to be precluded – the debtor's fraud vel non – was actually litigated in the state court. Ohio certainly recognizes the doctrine of collateral estoppel, which it has variously defined. In *Trautwein v. Sorgenfrei,* 391 N.E.2d 326, 327 (Ohio 1979)(citation omitted), the Ohio Supreme Court stated the doctrine as follows:

> [A] point of law or a fact which was actually and directly in issue in the former action, and was there passed upon and determined by a court of competent jurisdiction, may not be drawn in question in a subsequent action between the same parties or their privies.

In *Hicks v. De La Cruz,* 369 N.E.2d 776, 777 (Ohio 1977), the same court held that the preclusive effect would occur only where an issue "actually is litigated and determined by a valid and final judgment." Other Ohio courts have held that the estoppel cannot be

successful unless the relevant issue was " 'admitted or actually tried and decided' " in the first instance and thereafter a judgment rendered " 'on the merits.' " *Cashelmara Villas Ltd. P'ship v. DiBenedetto,* 623 N.E.2d 213, 215 (Ohio Ct. App. 1993)(quoting *Monahan v. Eagle Picher Indus., Inc.,* 486 N.E.2d 1165, 1168 (Ohio Ct. App. 1984)).

Ohio courts, however, have not agreed on whether or how to apply the foregoing standards of collateral estoppel to default judgments. Most of the recent cases are unreported, and none have undertaken a full discussion of this complicated issue. Some have applied the doctrine to default judgments. *See Merkle v. Hodary,* No. C-990223, 2000 WL 145325, at * 4 (Ohio Ct. App. Feb. 11, 2000) (stating only that "[a]lthough we recognize that the application of collateral estoppel is not consistently applied to default judgments in Ohio, we believe that under the facts of this case", etc.); *Corydon Palmer Dental Soc'y v. Johnson, Johnson & Assocs., Inc.,* No. 87 C.A. 121, 1988 WL 21334 (Ohio Ct. App. Feb. 16, 1988). Other courts have refused to apply the doctrine to default judgments. *Hickey v. Hancock Wood Elec. Coop.,* No. 92WD082, 1993 WL 241731, at * 3 (Ohio Ct. App. June 30, 1993); *North Dayton Truck Serv. v. Terrell*, No. 7447, 1982 WL 3691, at * 2 (Ohio Ct. App. Mar. 15, 1982) (holding that default judgment had no preclusive effect because "no issue was actually and necessarily litigated"). The Supreme Court of Ohio has not spoken directly on this issue.

The only reported opinion on this subject appears to be *Zaperach v. Beaver*, 451 N.E. 2d 1249 (Ohio Ct. App. 1982), in which an Ohio appellate court refused to apply collateral estoppel to a default judgment for divorce. The husband, who took the default judgment, argued that his wife, in failing to answer the divorce complaint, had admitted that no children were born of the marriage. The divorce complaint had alleged that no children were born of the marriage, and the husband sought to preclude that issue in a subsequent suit by the wife for child support. Observing that the divorce court had not "made an affirmative finding that no children were born," the court dismissed the husband's argument that the wife's failure to answer constituted an admission in the subsequent litigation. It then stated that

> [o]nly if there is an *express adjudication* of an issue by the court in the original action, whether by default or trial, can the

9

> judgment in that action be utilized as establishing a matter as between the parties. Here, there is no evidence of an adjudication by the divorce court.

*Id.* at 1252 (emphasis added). It thus appears that (1) default judgments may have preclusive effect in Ohio as to an issue that was the subject of an "express adjudication," and (2) an unanswered complaint and the default judgment based on it do not, by themselves, constitute an express adjudication. Although the term was not further defined in *Zaperach*, it seems from subsequent cases that an "express adjudication" is one that expressly finds something. For example, in *Cranfill v. Brown (In re Brown)*, 215 B.R. 844, 847 (Bankr. E.D. Ky. 1998), the bankruptcy court applied a collateral estoppel against a debtor so as to establish fraud in an action by a creditor under 11 U.S.C. § 523(a)(2)(A) where the Ohio state court "recited a finding of fraud." In *Corydon Palmer Dental Soc'y v. Johnson, Johnson & Assocs., Inc.,* No. 87 C.A. 121, 1988 WL 21334, at * 1 (Ohio Ct. App. Feb. 16, 1988), the court gave preclusive effect to a default judgment, but only where the defendant had answered the complaint, then defaulted, and the "trial court *found* that [he] had been negligent." (Emphasis added). The rule to be gleaned from these few available cases, mainly unpublished and from intermediate courts, is that a default judgment must contain express findings in order to be given preclusive effect in subsequent litigation between the parties.

Reaching this same conclusion after a careful review and analysis of Ohio's position on this question is Judge Speer, a bankruptcy judge sitting in Ohio. In *Hinze v. Robinson (In re Robinson),* 242 B.R. 380 (Bankr. N.D. Ohio 1999), Judge Speer first noted that "[u]nder Ohio law a default judgment obviates the plaintiff's burden to prove the elements of the claim alleged. *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Ass'n,* 28 Ohio St.3d 118, 122, 502 N.E.2d 599, 603 (Ohio 1986)." *Id.* at 386. That being so, he concluded that it was "reasonable to assume that normally issues are not 'actually litigated' for purposes of the collateral estoppel doctrine when a state court grants a motion for default judgment." *Id.* To reconcile the "actual litigation" requirement of collateral estoppel with the realities of default judgments, Judge Speer decided that the preclusive effect of default judgments must be limited to situations in which two circumstances conjoined:

10

> First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, *must actually make findings of fact and conclusions of law* which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding. In addition, given other potential problems that may arise with applying the collateral estoppel doctrine to default judgments (e.g., due process concerns), this Court will only make such an application if the circumstances of the case would make it equitable to do so.

*Id.* at 387 (emphasis added). Thus, the rule established in *Robinson* is that the state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

Considering the Ohio authority that does exist, we find *Robinson* to be a competent and useful prediction of the rules the Supreme Court of Ohio would adopt if it were to pass directly on this question. Accordingly, we adopt the basic standard in *Robinson* as our rule of decision in this case.

Although the Plaintiffs in this case may well have submitted evidence from which the Ohio court *could* have found the kind of fraud that would bar a discharge in bankruptcy, it is apparent that the court made no findings of fact or conclusions of law with respect thereto, not even informal ones. It merely stated from the bench, "Based upon the evidence, the court is satisfied that judgment should be rendered in favor of the plaintiffs . . . ." It then simply awarded damages count by count without making any reference to the facts or drawing any conclusions. A fair reading of the court's language is that, based on the evidence, the court was satisfied that judgment should be rendered *in the amounts that*

11

*followed.* It did not specifically find the Debtor guilty of fraud or any element of fraud. In fact, the judgment was awarded "jointly and severally" against the Debtor and two codefendants, as well as "individually" against the Debtor, leaving open to speculation whether the court found fraud as to each defendant or whether one defendant's fraud was imputed to others. It is this lack of clarity that contributes to our conclusion that the state court's brief statement does not meet the test in *Robinson* because it is not "sufficiently detailed to support the application of the collateral estoppel doctrine." *Robinson,* 242 B.R. at 387. Indeed, it contains no material detail whatever. Nor is it an "affirmative finding." *Zaperach*, 451 N.E. 2d at 1252. When all is said and done, the court's pro forma recitation may have meant nothing more than that the court was satisfied from the evidence that the *damages* it was awarding were appropriate in amount, assuming that the Debtor was liable due to the default nature of the hearing.

In *Robinson*, the bankruptcy court refused to give collateral estoppel effect to a default judgment that labeled the defendant's behavior as "unfortunate," where the bankruptcy issue was whether the defendant's conduct was willful or malicious. The court stated that a mere characterization did not amount to the kind of specific finding it thought necessary under Ohio law. In the case at bar, there is not even a characterization of the Debtor's conduct. Because the Ohio court did not make findings of fact or draw conclusions of law that would allow a subsequent court to determine whether the issue as to this Debtor was "actually litigated" or "passed upon and determined," we think the bankruptcy court erred in giving preclusive effect to the default judgment.

We think this a better result than one which would allow preclusion from reasoning backwards from the damage awards to what "must" have been found in order to justify them. For example, one could reason that the court's award of punitive damages on the fraud count must mean that it actually decided that a fraud was committed. But that same reasoning would find preclusion to be the result of *every* default judgment, and so in every automobile accident case we would reason backwards from an award of damages to the conclusion that the court *must* have decided that the defendant was negligent. Even if a review of the record showed that evidence had been presented from which the court *could* have found negligence, there would be no assurance that it did, for we can never know

whether the court awarded damages based on the evidence presented or merely on the defendant's default, as it was entitled to. It would always be free to ignore the evidence, or find it insufficient, and rely on the default instead. Only findings, or something like them, will show whether the court actually decided the question, and we think that the Plaintiffs have not carried their burden of showing such findings in this case.

### (C) *Rooker-Feldman* Doctrine

The bankruptcy court also based its holding on the *Rooker-Feldman* doctrine, a jurisdictional doctrine that provides that lower federal courts may not review the decisions of state courts. Only the United States Supreme Court may do so. *Singleton v. Fifth Third Bank (In re Singleton),* 230 B.R. 533, 536 (B.A.P. 6th Cir. 1999). Although the *Rooker-Feldman* doctrine prohibits lower federal courts from reviewing state court decisions, it does not prevent them from deciding an "independent claim, albeit one that denies a legal conclusion that a state court has reached." *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993). Furthermore, the doctrine does not require lower federal courts to surrender their own exclusive jurisdiction. Jurisdiction to determine the dischargeability of debts described by 11 U.S.C. § 523(a)(2) is exclusively within the bankruptcy courts, and no state court has jurisdiction to decide whether a fraud claim will be dischargeable in bankruptcy. 11 U.S.C. § 523(c); Fed. R. Bankr. P. 4007 advisory committee's note (1983); *In re Massa*, 217 B.R. 412, 419 (Bankr. W.D.N.Y. 1998), aff'd, 187 F.3d 292 (2d Cir. 1999).

The dischargeability of a debt must be recognized as a matter separate from the merits of the debt itself. Thus, under the *Rooker-Feldman* doctrine, a bankruptcy court may not review and redetermine the merits of a debt or set aside the default judgment reflecting it, but it may within its exclusive jurisdiction determine whether that debt is dischargeable or not. The bankruptcy court was not called upon to "reverse the state court action or void its ruling." *In re Singleton*, 230 B.R. at 536-37 (quoting *Bechtold v. City of Rosemount*, 104 F. 3d 1062, 1065 (8th Cir. 1997)). Rather, the issue before that court and this Panel is whether to give preclusive effect to the state court judgment so as to drive the trial court's determination of nondischargeability.

These principles and distinctions are important and are well summarized in a decision holding that the *Rooker-Feldman* doctrine did not apply to a bankruptcy court making a decision about the dischargeability of a debt under § 523(a)(6), a sister provision to § 523(a)(2).

> In considering the application of these doctrines to an action to except a debt from an individual's discharge pursuant to 11 U.S.C. §523(a)(2), (4), or (6), it is helpful to consider such an action as comprised by two distinct claims: (1) whether the debtor owes a debt to the plaintiff and (2) whether the debt owed by the debtor to the plaintiff is nondischargeable. The res judicata, collateral estoppel, and Rooker-Feldman doctrines may all apply to the first of these two claims. However, the res judicata and Rooker-Feldman doctrines may not apply to the second claim: i.e., whether the debt is nondischargeable. Such a claim does not exist until a bankruptcy case is filed. Therefore, the claim cannot have been determined in the pre-petition state court action. In any event, a claim of this sort may only be filed in and determined by the bankruptcy court. 11 U.S.C. § 523(c); Fed. R. Bankr. Proc. 4007(c).

*Jorge v. Mannie (In re Mannie),* 258 B.R. 440, 444-45 (Bankr. N.D. Cal. 2001). If the doctrine does not apply to dischargeability actions under § 523(a)(6), then it does not apply to those under § 523(a)(2).

In the case at bar the bankruptcy court thought that making a dischargeability determination would amount to the review of the state court's default judgment. We disagree and hold that the court should not have denied itself jurisdiction over a matter committed to its exclusive jurisdiction.

## V. CONCLUSION

The prerequisites for applying collateral estoppel, and thus for granting summary judgment, in this case have not been met in that (a) there remain unresolved issues concerning the Debtor's opportunity to fully and fairly litigate the state lawsuit because of questions concerning the validity of service on him, and (b) there are no findings of fact or conclusions of law in the state court's ruling that would enable a court to determine that the state fraud case was decided on its merits and not as a mere procedural default.

Moreover, the *Rooker-Feldman* doctrine does not forbid the bankruptcy court from exercising jurisdiction over questions of dischargeability under 11 U.S.C. § 523(a)(2). For these reasons, we believe the bankruptcy court erred in granting summary judgment to the Plaintiffs, and the case is accordingly **REVERSED** and **REMANDED**.

WILLIAM S. HOWARD, Bankruptcy Appellate Panel Judge, concurring.  I write separately to indicate my agreement with the Panel's reasoning in subsections (A) and (C). With respect to subsection (B), I agree that there was not sufficient specificity in the state court judgment on this multi-count complaint to allow the bankruptcy court to apply the doctrine of collateral estoppel but I respectfully disagree with the Panel majority's conclusion that the courts of Ohio require specific findings of fact in every case to satisfy the "actually litigated" requirement in order to apply the doctrine of collateral estoppel.