In re Gregory Todd SCHULTE, Debtor.

**John T. Wagner, Plaintiff,**

v.

**Gregory T. Schulte, Defendant.**

**Bankruptcy No. 05–59715.
Adversary No. 05–2436.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

March 28, 2008.

Robert Gray Palmer, Columbus, OH, for Plaintiff.

Michael T. Gunner, Hilliard, OH, for Defendant.

### MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

John T. Wagner ("Wagner"), the plaintiff in this adversary proceeding, seeks summary judgment on the issue of whether the debt arising from his $6 million state court judgment against the debtor, Gregory T. Schulte ("Schulte"), is excepted from discharge under 11 U.S.C. § 523(a)(6). Wagner alleges, and the state court found, that the injuries he sustained were the result of Schulte's willful and malicious conduct. Because the state court's factual findings are entitled to preclusive effect, the Court concludes that summary judgment is appropriate. The debt arising from the judgment is therefore excepted from discharge by § 523(a)(6).

### I. Jurisdiction

The Court has jurisdiction to determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

### II. Procedural and Factual Background

On June 3, 2005, Schulte filed a voluntary Chapter 7 petition following the suspension of his medical license and while a number of medical malpractice and other civil complaints were pending against him in the Franklin County, Ohio, Court of Common Pleas ("State Court"). On July 28, 2005, in a criminal action in the State Court, Schulte pleaded guilty to two counts of robbery, two counts of practicing medicine without a certificate, two counts of felonious assault, two counts of theft and two counts of tampering with drugs. Schulte is presently incarcerated as a result of his plea. The events leading to Schulte's guilty plea are undisputed. Wagner was a long-time patient in Schulte's pain management practice. Over the years that Wagner was treated by Schulte, the two men developed a friendship that both considered to be in the nature of a "father-son" relationship. Wagner was a retired labor negotiator, and Schulte confided in him and sought his advice on career and personal issues, in addition to acting as his physician. In

January 2000, Schulte implanted a morphine pump into Wagner to treat his chronic pain from pancreatitis.

In October 2004, The Ohio State University ("Ohio State"), Schulte's employer, placed him on administrative leave so that he could undergo evaluation and treatment for drug and alcohol dependency. Due to substance abuse problems, Schulte had been employed under consent agreements with Ohio State since 2001. The consent agreements required ongoing drug testing and counseling. On November 12, 2004, Ohio's state medical board suspended Schulte's license to practice medicine. At some point in January or February 2005, Ohio State terminated Schulte's employment. Throughout all relevant periods, Wagner was unaware of Schulte's drug dependency, the restrictions placed on him by way of the consent agreements or the suspension of his medical license.

In January 2005, Schulte telephoned Wagner and, under the pretense of conducting research, asked if he could remove a small sample of Wagner's spinal fluid from the morphine pump. Wagner consented. Schulte went to Wagner's home, removed the morphine from Wagner's pump and replaced it with a contaminated and unidentified fluid, under non-sterile conditions, resulting in significant pain and a bacterial infection for which Wagner was hospitalized repeatedly. Following the removal of the morphine and the onset of the infection, Wagner required two surgeries—one to remove the morphine pump and a second, six months later, to implant a new pump. Wagner incurred medical bills totaling $95,805.78 during this ordeal. Wagner was unaware at the time the morphine was removed that Schulte was not, in fact, engaged in medical research.

On September 12, 2005, Wagner filed an adversary proceeding in this Court to determine the dischargeability of a debt pursuant to § 523(a)(6). The complaint alleged that Schulte knowingly extracted morphine from Wagner's pump, resulting in physical injury to Wagner, substantial medical costs, extreme emotional distress and permanent impairment. The amount of the debt Wagner sought to except from discharge was not specified. The allegations set forth in the complaint were also the subject of a state court civil action ("State Court Civil Action") filed by Wagner against Schulte prior to the filing of Schulte's bankruptcy petition.

Schulte filed an answer in the adversary proceeding, generally denying the allegations, and Wagner commenced discovery. Judge Caldwell conducted pretrial proceedings before the adversary proceeding was reassigned on February 26, 2006. On July 17, 2006, Wagner filed a summary judgment motion ("First Motion") (Doc. 27), to which Schulte responded ("First Response") (Doc. 29) and Wagner replied (Doc. 30). Thereafter, the Court conducted a status conference at which the parties were informed that the bankruptcy court lacked jurisdiction to liquidate Wagner's personal injury claim. The parties were instructed to return to State Court for a determination of liability and damages, if any, and then to renew the motion for summary judgment in bankruptcy court, if necessary, for a determination of dischargeability of any judgment obtained.

Wagner subsequently obtained a default judgment against Schulte in the State Court Civil Action on the issue of liability, and the State Court set a hearing to consider damages. On July 26, 2007, Magistrate Pamela Broer Browning entered detailed findings of fact and conclusions of law. Judge John F. Bender adopted Magistrate Browning's findings and conclusions in a judgment entry dated August 16, 2007 ("Judgment"). The State Court found, among other things, that Schulte's

conduct constituted negligence per se and battery, that his conduct toward the Plaintiff was willful and malicious, that Schulte "exhibited a state of mind characterized by ill will, and he exhibited a conscious disregard for Mr. Wagner's rights and safety, which had a great probability of causing substantial harm to Mr. Wagner." Magistrate's Decision on Damages ("Magistrate's Decision") at 7, Exhibit to Pl.'s Mot. for Summ. J. ("Second Motion") (Doc. 35). In addition, the State Court concluded that under Ohio Revised Code § 2307.06(A), a person injured by a criminal act may recover damages, costs, attorney fees and punitive damages and that Schulte was civilly liable to Wagner due to his criminal conviction on charges of theft, tampering with drugs, criminal trespass and felonious assault.[1] *Id.* at 7. The State Court awarded compensatory damages to Wagner and his wife in the amount of $1 million and punitive damages in the amount of $5 million, plus interest and costs. *Id.* at 7–8.

After entry of the Judgment, Wagner filed the Second Motion in the bankruptcy court; Schulte responded ("Second Response") (Doc. 37), and Wagner replied (Doc. 39).[2]

### III. Legal Analysis

#### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, the dis-

---

1. The record is not clear whether Schulte's criminal charges resulted from the removal of morphine from Wagner's pump, or from other activities in which Schulte was engaged. The Magistrate's Decision, however, appears to connect the criminal plea to the Wagner incident, and Schulte has offered no evidence to refute this connection.

2. Following the reassignment of this adversary proceeding, the Court entered a Pretrial Scheduling Order Following Pretrial Conference ("PTSO") (Doc. 24). Part IV of the PTSO sets forth the following requirements for dispositive motions:

 Any motion for summary judgment shall contain a "Statement of Material Facts." The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact as to which the moving party contends there exists no genuine issue. Each fact listed must be supported by a specific citation to the record. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions, and affidavits. It does not, however, include attorney's affidavits. Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in denial of the motion.
 The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the mov-

 ant's Statement of Material Facts by admitting and/or denying each of the movant's factual assertions in matching numbered paragraphs. Each denial must be supported by a specific citation to the record. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.
 PTSO at 3–4.
 Both the First and Second Motions comply with the requirements set forth in the PTSO. Schulte's First and Second Responses, however, do not comply. The First Response contains only the following "Statement of Facts": "Although Plaintiff's [sic] correct that Defendant removed morphine from his pump and then later pled guilty to various offenses including robbery and felonious [sic], the primary element to prevent the debts herein from being discharged is that Defendant must have intended to cause injury." The Second Response contains no statement of facts and nothing controverting Wagner's Statement of Material Facts. The First and Second Responses do contain brief arguments regarding whether the facts asserted are legally sufficient to establish an intent by Schulte to cause injury. As set forth in the PTSO, however, the facts set forth by the moving party are deemed admitted unless specifically controverted by the opposing party.

covery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir.2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak*, 503 F.3d at 577; *Skowronek v. Am. S.S. Co.*, 505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

" '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.' " *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak*, 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins)*, 292 B.R. 842, 845 (Bankr. S.D.Ohio 2003).

A court may grant a summary judgment motion based on facts accepted as true as a result of a failure by the opposing party to respond to allegations in the manner required by the court's pretrial procedure.

*See, e.g., Berger v. Brannan*, 172 F.2d 241, 243 (10th Cir.), *cert. denied*, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949).

Here, due to his failure to comply with the PTSO, Schulte is deemed to have admitted the material facts as set forth by Wagner. The issue before the Court is solely a question of law. Accordingly, summary judgment is appropriate.

**B. Section 523(a)(6)—Willful and Malicious Injury Requirement**

■ Wagner seeks to prevent Schulte's discharge of the debt arising from the Judgment under § 523(a)(6) of the Bankruptcy Code. Section 523(a)(6) provides that

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6).

In *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Supreme Court held that, in order to except a debt from discharge under § 523(a)(6), a plaintiff must establish that the debt arises from a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Applying *Geiger*, the Sixth Circuit, in *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999), found that "unless 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' Restatement (Second) of Torts § 8A, at 15 (1964), he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)."

Schulte, in his discovery deposition, admitted that he removed morphine from Wagner's pump, Schulte Dep. 75:8–10, Jan. 31, 2006, and that he did not use it to conduct research, *id.* at 77:11–12. He further testified he did not know what would happen to Wagner when the morphine was withdrawn, but that he "thought he was going to have a pump refill before there was any—before he felt any effects of pain or anything like that." *Id.* at 78:2–4.

Magistrate Browning made a specific finding that when Wagner learned that Schulte had stolen the morphine from his pump, "[i]t was a 'stunning blow' to Mr. Wagner, who felt as if his own son had stolen his morphine. Schulte's breach of Mr. Wagner's trust caused Mr. Wagner to feel 'violated.'" Magistrate's Decision at 5. The Magistrate further found:

22. As a direct and proximate result of Schulte's conduct, as described above, Mr. Wagner's trust in Schulte was breached and Mr. Wagner suffered physical injury, extreme emotional distress, and an impairment of his ability to function normally.

23. In their care and treatment of Mr. Wagner, Defendants [3] failed to exercise the care and skill ordinarily used by physicians or other medical providers engaged in the practice of medicine or treatment of the sick.

24. Defendants' conduct constituted negligence *per se,* a violation of [Ohio Revised Code] 4731.41 (practice of medicine or surgery without certificate), and a breach of fiduciary duty owing to the special relationship of trust between Mr. Wagner and Schulte.

25. *Defendants' conduct constituted battery.*

26. As a direct and proximate result of Defendants' conduct, as described above, Mr. Wagner incurred medical bills in the amount of $95,805.78, from January 18, 2005 through August 10, 2005.

27. *Schulte's conduct towards Mr. Wagner, as described above, was willful and malicious.* Schulte exhibited a state of mind characterized by ill will, and he exhibited a conscious disregard for Mr. Wagner's rights and safety, which had a great probability of causing substantial harm to Mr. Wagner.

Magistrate's Decision at 6–7 (emphasis added).

The Magistrate's Decision included the following conclusions of law:

1. Defendants are liable to Mr. Wagner pursuant to [Ohio Revised Code] 2307.60(A), for theft ([Ohio Revised Code] 2913.02), for tampering with drugs ([Ohio Revised Code] 2925.24), for criminal trespass ([Ohio Revised Code] 2911.21), and for felonious assault ([Ohio Revised Code] 2903.11).

2. As a direct and proximate result of Defendants' tortious conduct, as described above, Mr. and Mrs. Wagner are entitled to recover compensatory damages in the amount of $1,000,000 from Defendants.

3. As a direct and proximate result of Defendants' willful and malicious conduct, as described above, Mr. and Mrs. Wagner are entitled to recover

---

**3.** The reference is in the plural because Schulte did business as Gregory Todd Schulte, M.D., Ltd., dba Central Ohio Pain and Spine Institute, and that entity also was named as a defendant in the State Court Civil Action.

punitive damages in the amount of $5,000,000 from Defendants.

*Id.* at 7–8.

 The Magistrate's Decision set forth detailed findings of fact and conclusions of law establishing that Schulte willfully and maliciously injured Wagner. The Judgment was entered following adoption of those findings and conclusions by the trial judge. By failing to respond to the Statement of Material Facts in either the First or Second Motion—facts that are essentially identical to those set forth in the Magistrate's Decision—Schulte is deemed to have admitted the facts. Yet, Schulte asserts that he lacked the intent to cause injury, apparently based on the statement in his deposition that he believed Wagner would receive replacement morphine before he felt any pain. Schulte Dep. at 78:2–4. Even if this is true—and for purposes of summary judgment the Court must assume that it is—the Court still finds Schulte's actions to be willful and malicious for purposes of § 523(a)(6). The removal of the morphine in and of itself was done under false pretenses and, according to the State Court, constituted battery and felonious assault. A debt arising from an assault and battery falls squarely within § 523(a)(6)'s willful-and-malicious-injury exception to discharge. *See Steier v. Best (In re Best)*, 109 Fed. Appx. 1, 5 (6th Cir.2004) ("Debts arising out of these types of misconduct satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises."); *Pettey v. Belanger ex rel. Belanger*, 232 B.R. 543, 547 (D.Mass.1999) ("[P]roof that [the debtor] committed sexual assault and battery in itself provides proof that he intended to injure [the creditor].").[4] Schulte's medical license was suspended at the time he took Wagner's morphine, and even if his license had been current, he clearly did not act to further a therapeutic goal, to render medical care to his patient, or even to retrieve a sample of fluid for research purposes (as he falsely represented to Wagner). Given his long relationship with Wagner, he was well aware of Wagner's serious medical condition and his need for pain relief. He intentionally violated Wagner's trust, as well as his person, by means of lies and deceit. Under these circumstances, the Court finds that Schulte knew that the harm that occurred was "substantially certain" to result from his conduct. The Court therefore concludes that the Judgment gives rise to a debt for willful and malicious injury to Wagner by Schulte.

**C. Preclusive Effect of the State Court Judgment**

 Wagner moves for summary judgment based on the preclusive effect of the Judgment. The doctrine of collateral estoppel—also known as issue preclusion—prevents the relitigation of issues of fact or law, necessary to the judgment, previously decided between the same parties.[5] *Mar-*

---

4. Under Ohio law, "[a] person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 524 N.E.2d 166, 167 (1988) (citing Restatement (Second) of Torts § 13 (1965)). The State Court's determination that "[Schulte's] conduct constituted battery," Magistrate's Decision at 6, necessarily establishes that Schulte's debt to Wagner arises from a willful and malicious injury within the meaning of § 523(a)(6).

5. The Sixth Circuit noted in *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693 (6th Cir.1999), that the United States Supreme Court has expressed a preference for use of the terms "issue preclusion" and "claim preclusion" rather than the traditional phrases "res judicata" and "collateral estoppel." *Fordu*, 201

*kowitz*, 190 F.3d at 461. " '[T]he whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed.' " *Id.* (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

■ The doctrine of issue preclusion applies in the context of dischargeability litigation. *See Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir.1995) ("The doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a)." (citing *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991))). The fact that bankruptcy courts have "exclusive jurisdiction over dischargeability issues does not alter this rule." *Id.* at 53. *See also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) ("[A] state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts."); *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981) ("[T]hat Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts.").

Based on the State Court's specific findings that Schulte's "conduct towards Mr. Wagner ... was willful and malicious[,] [and that] Schulte exhibited a state of mind characterized by ill will, and ... exhibited a conscious disregard for Mr. Wagner's rights and safety, which had a great probability of causing substantial harm to Mr. Wagner[,]" Magistrate's Decision at 7, Wagner asserts that Schulte is barred from relitigating the issue of whether the injury was willful and malicious for purposes of § 523(a)(6). Further, Wagner asserts that additional evidence of willful and malicious injury is found in Schulte's guilty plea to felonious assault, which, under Ohio law, is defined as knowingly causing physical harm to another. Ohio Rev.Code Ann. § 2903.11(A)(1) (West 2007).[6]

■ Schulte argues that because he made no appearance in the State Court Civil Action and was not represented in that lawsuit, he did not have a full and fair opportunity to litigate the claims against him. According to Schulte, the doctrine of collateral estoppel does not apply in the context of a default judgment. Thus, Schulte maintains that he is not barred by the prior judgment from retrying the issue in bankruptcy court. He is mistaken. The Court looks to state law to determine whether Ohio courts would give preclusive effect to Wagner's State Court judgment. *Markowitz*, 190 F.3d at 461; *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir.1997). Under Ohio law, the doctrine of issue preclusion applies when the following elements are established:

1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have

---

F.3d at 702–03 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56, (1984)). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been actually litigated and decided." *Migra*, 465 U.S. at 77 n. 1, 104 S.Ct. 892.

**6.** Ohio Revised Code § 2903.11(A)(1) provides that:

(A) No person shall knowingly do either of the following:
(1) Cause serious physical harm to another or to another's unborn[.]

been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with a party to the prior action.

*Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 921 (6th Cir. BAP 2000) (quoting *Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 415–16 (Bankr.N.D.Ohio 1998)). *See also MetroHealth Med. Ctr. v. Hoffmann–LaRoche, Inc.*, 80 Ohio St.3d 212, 685 N.E.2d 529, 533 (1997) ("Issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." (internal quotation marks omitted)).

 After reviewing Ohio law on the application of these four standards to default judgments, the Sixth Circuit Bankruptcy Appellate Panel in *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186 (6th Cir. BAP 2002), relying on the bankruptcy court's reasoning in *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 387 (Bankr. N.D.Ohio 1999), found that the preclusive effect of a default judgment is restricted to those instances where the plaintiff has actually submitted to the state court admissible evidence, apart from the pleadings, and the state court, based upon the evidence submitted, has actually made findings of fact and conclusions of law sufficiently detailed to support the application of the collateral estoppel doctrine. *Sweeney*, 276 B.R. at 193. The *Sweeney* court determined that "the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment.... Those findings and conclusions will have preclusive effect." *Id.* at 194.

 Here, the four necessary prerequisites for application of the doctrine of collateral estoppel have been established. First, the State Court entered a final judgment on the merits and Schulte was given a full and fair opportunity to litigate, whether he availed himself of that opportunity or not. Schulte had notice of the complaint filed in the State Court Civil Action and failed to answer. He failed to respond to the motion for default judgment and no appearance was made on his behalf at the damages hearing. He did not appeal from, move to reconsider, or otherwise contest the validity of the findings in the Magistrate's Decision, which were adopted in the Judgment. While the State Court Civil Action was pending, Schulte was represented by bankruptcy counsel in this Court. His decision not to defend or appear through counsel in State Court may or may not have been tactical, but in any event, it was a calculated risk.

The Court has been presented with a facially valid judgment and finds that Wagner has met his burden with respect to the first element of Ohio's collateral estoppel test. *See Hinze*, 242 B.R. at 385. The question of the willful and malicious nature of the injury—which is identical to the issue in dispute in this dischargeability action—was actually litigated in the State Court, as reflected by the Magistrate's specific findings following a hearing on damages. Wagner was the plaintiff in State Court and Schulte was the defendant; the parties occupy the same roles here. Thus, Wagner has fulfilled the second, third and fourth elements necessary to apply the doctrine of collateral estoppel. The Judgment accordingly is entitled to issue-preclusive effect.

Contrary to Schulte's assertion, there are no material facts in dispute. Under *Sweeney*, Schulte is collaterally estopped from relitigating the issue of whether the

debt in question arose from a willful and malicious injury.

### IV. Conclusion

For these reasons, Court finds that there exist no genuine issues of material fact and that Wagner is entitled to judgment as a matter of law. The Second Motion is **GRANTED.** The debt arising from the Judgment is excepted from discharge under 11 U.S.C. § 523(a)(6). A separate judgment entry in accordance with this memorandum opinion will be entered.

**IT IS SO ORDERED.**