OPINION
{¶ 1} Mother-appellant Ashley McGee ("McGee") brings this appeal from the judgment of the Court of Common Pleas of Seneca County, Juvenile Division, terminating her parental rights. For the reasons discussed below, the judgment is affirmed.
 {¶ 2} On October 18, 2001, McGee gave birth to Bryce McGee ("Bryce"). No father has been identified to date. Bryce was brought to the attention of the Seneca County Department of Jobs and Family Services ("the Agency") after he was found naked and playing unsupervised behind a hotel in Tiffin, Ohio. The Agency and McGee voluntarily entered into a case plan and worked together from July of 2005 until May of 2006. On May 19, 2006, the Agency filed a complaint alleging that Bryce was neglected and dependent. The trial court subsequently placed Bryce in the temporary custody of his brother's father. Following the probable cause hearing, Bryce was returned to McGee's home on the condition that it be maintained in a clean and safe condition. On June 9, 2006, Bryce was again removed from McGee's home when it was found to be filthy, full of beer cans, and without electricity. *Page 3 
 {¶ 3} On October 12, 2006, Bryce was found to be dependent. The trial court then ordered that temporary custody be continued. On June 6, 2007, the Agency moved for permanent custody of Bryce. Service of the motion for permanent custody was obtained pursuant to the Ohio Civil Rules. An initial hearing date was set for September 18 and 19, 2007. Notice was sent to McGee by certified mail, but was returned as unclaimed. It was later determined that McGee had been evicted. On July 27, 2007, service was sent via certified mail to a new address. This notice was returned as undeliverable. On August 1, 2007, a third notice was sent by certified mail to a different address. This letter also came back as unclaimed. Notice was finally sent to the last known address by regular mail on August 20, 2007. On August 30, 2007, McGee's attorney filed a motion to continue the hearing in order for the psychological evaluation of McGee to be completed prior to the hearing. This motion was granted and the hearing was rescheduled for November 1, 2007. Notice of the new hearing date was sent to McGee at her Washington Street address and was signed for by Ronald Young. On October 23, 2007, the Agency requested a second service of the notice by certified mail be sent to McGee at an address in Ashtabula. This was done. The return receipt indicates that McGee personally signed for the notice.
 {¶ 4} On November 1, 2007, the hearing began, however McGee was not present. She had contacted her counsel and asked him to request a continuance. *Page 4 
The trial court granted the motion for a continuance due to McGee having new counsel. The new hearing date was set for November 28, 2007, and notice was again sent by certified mail to the Ashtabula address. The return receipt was signed by someone other than McGee. On November 28, 2007, the trial court began the hearing and noted that McGee was not present. The following dialogue occurred.
 The Court: * * * Mr. Bova, mother's failed to answer the call of the court, and do you want to talk to me a little bit about that?
 Mr. Bova: Yes, Your Honor. I believe the Court is aware of the efforts prior to the November 1st hearing to — for me to contact my client, Ashley McGee. I did have a brief contact with her over the telephone on October 30th. That was the first contact that I had with her and an opportunity to speak with her. Since the November 1st hearing, when this matter was continued until today to give me an opportunity to enlist my client's assistance in this matter, I did talk to Ashley on the telephone several times while we were here in court.
 Following the Court hearing, I made a telephone call on the 2nd of November to Ashley, did not speak with her at that time. Sent out a letter to her on November 4th outlining, again, the follow-up as to what occurred on November 1st in court; that the hearing was continued to November 28th; in reviewing the Case Plans that I had available in my file, listed the services that were, that were listed in the Case Plan that she was required to complete; that if she had any information and documents that would verify a completion, that she should provide those to me.
 * * *
 I've sent her out a letter on November 20th indicating that the final hearing on the permanent custody was scheduled for today at 9:00; that I needed to speak with her so that I could get any written list of witnesses that she had and their current addresses, people that I could contact, any certificates of *Page 5 completion of case plan services; and indicated to her that I, you know, wanted that as soon as possible and that she should be able to get that to me by Friday, the 23rd; reminded her that after speaking with her on the 19th of November, that she was to contact me at 11:00 to talk to me and that I did not receive that telephone call. * * *
 * * *
 She called back again on the 26th — or no, I called her on the 26th of November and again, having not heard from her, she again concentrated on the case plan, that what she received was not her case plan. * * * * — You know, I said, we have the hearing on Wednesday, and you have to be there. She didn't indicate to me any, uhm, that she was not going to be here, that there was any reason for her not to be here.
 Received another telephone call from Ashley yesterday afternoon at about 4:15 at my office. And at that time she informed me she was not going to be here, she had no way to get here, she didn't have transportation herself, no friends could take her, that her father couldn't come get her, his vehicles were broken down, that she had spoken with Erin Tea — she said that yesterday, so that would be Monday the 26th — and told her that she would not be there.
 As I said, when I talked to Ashley on the 26th, she didn't indicate that to me. I told her that, you know, that that was a problem; that it posed a problem for the Court, posed a problem for me, and posed a great problem for her because permanent custody hearing, from all indications that I received on the 1st of November, would proceed on Wednesday; that she needed to try and get here; that I did not know what to do to assist her in that, but I would — she needed — had to be here.
 She indicated before, "There is no way I'm not going to be there," and I indicated, "Well, I'll do my best" is all I indicated to her that I could do. And that was the last contact. So I made efforts. *Page 6 
 * * *
 The Court: Okay. In review of the pleadings, the Court sees that certified mail notice of this hearing was sent to Ashley McGee, and it appears that an agent on her behalf signed the green card, evidence and serviced by certified mail on or about November 14, 2007. And the green card was returned to the Court and file stamped November 16th.
 * * *
 The Court finds that mother was duly served with notice of these proceedings; that she was aware of time, place and nature of these proceedings and how these proceedings would effect the rights as a parent.
 * * *
 * * * Mother has notified the Agency and counsel that she would not be appearing here today.
Tr. 5-12. The hearing then proceeded. On December 21, 2007, the trial court entered judgment terminating McGee's parental rights. McGee appeals from this judgment and raises the following assignment of error.
 The judgment of the trial court is void in that the court failed to properly acquire jurisdiction over [McGee] for the purpose of terminating her parental rights.
 {¶ 5} The sole assignment of error in this case alleges that the service of the notice was deficient. The purpose of service is to provide notice to the parties of the time and place of the hearing along with the nature of the hearing. Questions concerning the appropriate methods of service within the state are controlled by Civil Rule 4.1, which provides for service by 1) certified or express *Page 7 
mail with return receipt; 2) personal service; and 3) residence service. Civ. R. 4.1. The record indicates that the trial court attempted service through the use of certified mail with return receipt. The requirements for this method are as follows.
 Evidenced by return receipt signed by any person, service of any process shall be by certified or express mail unless otherwise permitted by these rules. The clerk shall place a copy of the process and complaint or other document to be served in an envelope. The clerk shall address the envelope to the person to be served at the address set forth in the caption or at the address set forth in written instructions furnished to the clerk with instructions to forward. The clerk shall affix adequate postage and place the sealed envelope in the United States mail as certified or express mail return receipt requested with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered.
 The clerk shall forthwith enter the fact of mailing on the appearance docket and make a similar entry when the return receipt is received. If the envelope is returned with an endorsement showing failure of delivery, the clerk shall forthwith notify, by mail, the attorney of record or, if there is no attorney of record, the party at whose instance process was issued and enter the fact of notification on the appearance docket. The clerk shall file the return receipt or returned envelope in the records of the action.
Civ. R. 4.1(A). "Service by certified mail is perfected when it is sent to an address `reasonably calculated to cause service to reach the defendant.'" Tube City Inc. v. Halishak, 8th Dist. No. 88287, 2007-Ohio-2118, ¶ 22 (citing Ohio Civ. Rights Comm. v. First Am.Properties (1996), 113 Ohio App.3d 233, 237, 680 N.E.2d 725). *Page 8 
 {¶ 6} Here, the trial court sent notice of the hearing via certified mail with return receipt requested. The letter was signed for by someone at the address and the receipt was returned to the court. The clerk of courts included the return receipt in the record. Thus, the requirements of Civ. R. 4.1(A) were met. Although McGee did not sign for the notice herself, the clerk sent the notice to the last known address of McGee. McGee had personally signed for certified mail from the clerk sent to the Ashtabula address on October 26, 2007. On November 1, 2007, less than one week later, the clerk sent the notice at issue to the same address. Thus, the notice was sent to an address reasonably calculated to reach McGee and service was perfected when McGee's agent signed for the notice.
 {¶ 7} Additionally, McGee does not claim that she did not actually receive notice of the hearing. She only argues that another method of service might have been better. However, the statements presented to the court by McGee's counsel clearly indicate that McGee had actual notice of the hearing. Counsel sent McGee various letters containing the hearing date and time. Counsel also personally told McGee over the phone when the hearing would be held. The day before the hearing, counsel spoke with McGee who indicated that she was aware of the hearing and would not likely attend. Given this evidence, along with the return receipt, the record clearly indicates that McGee had actual knowledge of the hearing. Even if another method might have been better, the record shows that the *Page 9 
method used was permissible and accomplished the goal of giving notice regarding the date, time, place, and nature of the hearing. Thus, McGee has suffered no prejudice through the method of service chosen by the clerk. The assignment of error is overruled.
 {¶ 8} The judgment of the Court of Common Pleas of Seneca County, Juvenile Division, is affirmed.
Judgment Affirmed.
 PRESTON and ROGERS, J.J., concur. *Page 1