[Cite as *In re R.G.H.*, 2021-Ohio-2603.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | |
| IN RE: R.G.H., N.H., M.Y.G.H. | : | Appellate Case No. 29088 |
| | : | |
| | : | Trial Court Case Nos. G-2019-729-OG |
| | : | G-2019-730-OG |
| | : | G-2019-731-OG |
| | : | |
| | : | (Appeal from Common Pleas |
| | : | Court – Juvenile Division) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of July, 2021.

. . . . . . . . . . .

JOHN (HUI) LI, Atty. Reg. No. 0082661, 3209 Carrier Avenue, Dayton, Ohio 45429
   Attorney for A.H.

SARVANI P. NICOLOSI, Atty. Reg. No. 0085621 & CARA J. WILLIAMS, Atty. Reg. No.
0085921, 130 West Second Street, Suite 700W, Dayton, Ohio 45402
   Attorneys for A.G.

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Father appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which sustained Mother's motion to vacate an order granting custody of the parties' three children to Father due to lack of personal jurisdiction over Mother. We affirm the judgment of the juvenile court.

{¶ 2} On February 7, 2019, Father filed a pro se motion for allocation of parenting time. On April 18, 2019, counsel for Father filed a motion for continuance, asserting that service upon Mother had not been perfected, and also filed an amended motion for full custody of the children and for an ex parte custody order. The motion for an ex parte order included Father's affidavit, which asserted that Mother was an "undocumented illegal alien" and that Father believed she was concerned about her potential deportation. Father averred that, to avoid deportation and obtain an "E Visa" as a purported domestic violence victim, Mother had fraudulently obtained an ex parte civil protection order, which was later dismissed when she failed to appear. Father also stated that Mother withdrew the children from Centerville Schools and moved to an unknown location in Yonkers, New York, where the children briefly attended school before Mother withdrew them. According to Father, on April 1, 2019, a physician in Long Island City, New York, prescribed several medications for one of the children when he became ill, but none of the medications were picked up by Mother because she had no money. Father averred that Mother has a history of mental illness, having been diagnosed with "Emotional Compromise Disorder" and another mental health disorder. Father also stated that he was concerned that the children were "at immediate or imminent risk of irreparable harm unless immediate action" was taken, that the basic needs of the children were not being met, that the children were being neglected, and that Mother was unstable.

{¶ 3} On April 19, 2019, the magistrate denied the motion for an ex parte order, and the juvenile court adopted the magistrate's decision. Father filed objections on April 26, 2019, repeating the averments in his affidavit.

{¶ 4} On April 29, 2019, an affidavit of service was filed, signed by process server Rennell Davis; the affidavit stated that Davis had personally served Mother with the amended motion for custody and motion for a continuance on April 20, 2019, at 1:18 p.m. at 770 Saint Nicholas Avenue, New York, N.Y. The affidavit stated that "Deponent asked the party being served if she was the person named in Amended Motions and the Respondent stated Yes after she was identified by the photo and shown the photo annexed to this Affidavit of Service." No photo was attached to the affidavit. The affidavit further stated that the person Davis spoke to and served denied being in active military service in any capacity and "wore ordinary civilian and no military uniform." Davis averred that, based on these conversations and observations, the person he served was not in military service.

{¶ 5} The juvenile court overruled Father's objections on May 6, 2019; citing Father's motion for a continuance, the court concluded that, even if it were inclined to grant the ex parte order, Father had "no knowledge of Mother and/or the children's location." The matters were set for hearing on May 14, 2019, before the magistrate. Following that hearing, the magistrate issued an interim order granting Father parenting time every other weekend, effective May 17, 2019, and two telephone contacts with the children per week. The trial was set for July 30, 2019.

{¶ 6} Only Father and his counsel were present at trial. On October 4, 2019, the magistrate granted custody of the children to Father, and the juvenile court adopted this

order. The magistrate's decision stated that service had been perfected to notify the parties of the proceeding.

{¶ 7} On October 30, 2019, Mother's attorney filed a limited notice of appearance for the purpose of opposing service, venue, and personal jurisdiction. On November 6, 2019, Mother's attorney filed a motion for an emergency stay of the magistrate's decision and a motion for an extension of time to file a motion to set aside the magistrate's decision. The motion noted that additional time was necessary "to ensure that all communication is properly translated as Mother speaks limited English." According to the motion, Mother requested that the court communicate with a family court in New York, because litigation concerning the minor children was occurring there and because that court had issued a writ requiring Mother to produce the children at a hearing on November 7, 2019.

{¶ 8} The supporting memorandum stated that, on November 28, 2018, Mother filed a petition for a domestic violence civil protection order (CPO) against Father in Ohio, alleging that he threatened to kill her and her friends and had been "otherwise abusive." It further stated that Father "would sexually assault [Mother]" and was "oppressively controlling." Mother asserted that Father had been arrested on December 9, 2018, for violating the CPO, and he had been charged in the Kettering Municipal Court under case number 18CRB02321. Mother asserted that Father "sent two men to [her] home which frightened her. Upon realizing that the protection order was insufficient to keep her safe, [Mother] fled to New York on December 15, 2019 with the three children." Mother asserted that she initially stayed with family before "finally moving into a shelter in an undisclosed location on January 15, 2019." She had remained at a confidential address

in New York since that time.

{¶ 9} Mother asserted that, while she was in New York, the ex parte CPO obtained in Ohio had been dismissed for want of prosecution, and the charge in the Kettering Municipal Court had been dismissed because she had fled and was no longer available to the prosecution. Mother asserted that, when she fled to New York, "there was no prior custody order and she had sole custody by operation of law."

{¶ 10} With respect to service of Father's motions, Mother asserted that on April 19, 2019, a summons and notice of hearing was filed with the Montgomery County juvenile court indicating that counsel for father had instructed the juvenile court clerk's office to issue a summons by personal service to Mother at a Centerville, Ohio address. "By this date, however, [Mother] had already moved to New York and would not have been found in Centerville." On April 29, 2019, process server Renell Davis claimed to have personally served upon Mother the Father's amended motion for custody and motion for a continuance on April 20, 2019 at 1:18 p.m. at 770 St. Nicholas Avenue, New York, NY, 10031, after Father hired a private investigator to find Mother.

{¶ 11} The memorandum continued:

On May 14, 2019, the Montgomery County Juvenile Court set the hearing for Tuesday, July 30, 2019, but the certificate of service was mailed to Mother [at the Centerville address] even though she was allegedly served with process in New York.

On June 13, 2019, the New York Court exercised jurisdiction over the children by entering a Family Offense Protection Order that covers [Mother] and the three minor children of the parties. The Stay Away order

prohibits contact outside of Court-Ordered visitation.

On June 26, 2019 [Mother] filed for custody in the Family Court in King's County New York * * *. [Mother] contends, in her Custody petition that there was no other proceeding that could impact the New York proceeding because she had no knowledge of the Ohio action. The Family Court also assigned the Children's Law Center to represent the children in furtherance of the children's safety and well-being.

On July 30, 2019, the Ohio Court held a custody trial and Mother was absent as she had no knowledge of the action. The Decision was issued on October 4, 2019 and the certificate of service indicates that it was mailed to [the Centerville address].

After arriving in New York, [Mother] never received notice of any Ohio actions. In fact, [Mother] did not learn of this court's October 4, 2019 decision until Father's New York counsel forwarded the decision to Mother's New York Counsel on October 30, 2019.

{¶ 12} Mother argued that the October 4, 2019 magistrate's decision should be stayed pending resolution of her "forthcoming motion" to set aside the magistrate's decision because: service was never perfected on Mother; the children were well-established in New York, having lived there for 11 months; Mother and children would be unsafe if they had to return to Ohio to litigate custody, as demonstrated by Father's protection order violations; Father had a demonstrated ability to litigate the custody action in New York, as he had retained an attorney there and submitted to personal jurisdiction of the New York court; litigating custody in Ohio would be unduly burdensome for Mother,

who feared for her life from Father and had a better support system and protective system in New York; Father had significant connections to New York, and it would not offend traditional notions of fair play and substantial justice for Father to litigate custody and visitation in New York.

{¶ 13} On November 12, 2019, Father opposed Mother's motion, repeating the allegations in his motion for custody.

{¶ 14} The juvenile court treated Mother's motion to set aside the magistrate's decision and judge's order as an objection. On November 22, 2019, the juvenile court sustained Mother's objection on the basis that the order setting the trial date was sent to the Centerville address, and it was undisputed that Mother was not in Ohio at that time. The court vacated its prior order and indicated that it would reset the matter for further proceedings. The court also indicated that a judicial telephone conference had been scheduled with a New York family court judge on December 18, 2019.

{¶ 15} On December 3, 2019, Father filed a motion for a stay pending appeal and a notice of appeal. His motion for a stay asserted that, when he "went to New York to retain counsel to register and enforce his Order, the response of [Mother] was again to fabricate facts in a continuing effort to keep hiding from federal authorities to the detriment of the children."

{¶ 16} On December 17, 2019, Mother opposed Father's motion for a stay, asserting that fundamental principles of due process applied and that she Mother could not be said to have lost custody in the Ohio proceeding when neither she nor the children participated in the Ohio litigation or lived in Ohio at that time. Mother asserted that a stay was appropriate "to preserve the status quo pending litigation." She also argued that

Father's characterizations of her were inaccurate.

{¶ 17} On December 20, 2019, following a phone conference with the New York judge and the parties' attorneys, the juvenile court found that the New York Family Court judge had "independently determined that he has jurisdiction" over the case and would retain the case on his docket. As such, the court dismissed Father's motion for a stay pending appeal as moot.

{¶ 18} On September 11, 2020, in considering Father's appeal from the juvenile court's order, this Court reversed and remanded the matter to the juvenile court. We reasoned:

Assuming proper service of process, a trial court in a civil action is not required by Civ.R. 5(B) or any other rule or statute to serve a party with notice of a trial or hearing date. *Ohio Valley Radiology Assocs., Inc. v. Ohio Valley Hosp. Assn.,* 28 Ohio St.3d 118, 124, 502 N.E.2d 599 (1986); *Stewart v. Strader*, 2d Dist. Clark No. 2008-CA-116, 2009-Ohio-6598, ¶ 17. This said, due process does require that a party receive reasonable notice of a trial or hearing date, and "an entry of the date of trial on the court's docket constitutes reasonable, constructive notice of that fact." *Ohio Valley Radiology Assocs.* at 124. This conclusion is based upon the premise that, once served, a party is "expected to keep [herself] informed of the progress of [the] case * * *." *Stewart* at ¶ 20, quoting *Pearl v. J&W Roofing and Gen. Contracting*, 2d Dist. Montgomery No. 16045, 1997 WL 86415, *1. (Citation omitted.)

The juvenile court's dockets reflect that, in each case number, the

May 14 interim order was filed and entered upon the docket. As already noted, the interim order set forth the July 30 trial date. Thus, assuming Mother was personally served with the custody motion, she had at least constructive notice of the trial date. Since such constructive notice is sufficient to satisfy due process, the juvenile court erred when it concluded that Mother had not been provided notice of the hearing date and that this failure required vacating the custody judgment.

This conclusion requires reversal of the juvenile court's vacation order. But it does not end the discussion, because Mother's motion, which only requested leave to file a motion to vacate the custody judgment, asserts that she was not served with the custody motion. Of course, "[w]here service of process is not made in accordance with the Rules of Civil Procedure, the trial court lacks jurisdiction to consider the [action], and any judgment [obtained] is void ab initio." *Portfolio Recovery Assocs., LLC v. Thacker*, 2d Dist. Clark No. 2008-CA-119, 2009-Ohio-4406, ¶ 22, citing *Rite Rug Co., Inc. v. Wilson*, 106 Ohio App.3d 59, 665 N.E.2d 59 (10th Dist.1995). Where, as here, the record reflects that service was accomplished in compliance with the Civil Rules (in this case, Civ.R. 4.1(B)), service is presumed proper unless rebutted "with sufficient evidence of non-service." *Portfolio Recovery* at ¶ 20, quoting *Carter-Jones Lumber Co. v. Myers*, 2d Dist. Clark No. 2005-CA-97, 2006-Ohio-5380, ¶ 11. When a party submits affidavit testimony asserting a failure of service, the court must hold a hearing to determine whether the "presumption of service [can

be] satisfactorily rebutted." *Id.* at ¶ 31. (Citations omitted.) Upon remand, assuming Mother asserts a failure of service supported with affidavit testimony, the juvenile court must conduct a hearing to determine whether Mother is able to rebut the presumption of proper service.

(Footnotes omitted.) *In re R.G.H., N.H., and M.Y.G.H.*, 2d Dist. Montgomery No. 28628, 2020-Ohio-4403, ¶ 11-13.

{¶ 19} On December 1, 2020, following an administrative conference with counsel, the juvenile court ordered Mother to "submit an affidavit testimony asserting a failure of service and any other documentations within 30 days * * *." The order stated that the court would thereafter conduct a hearing to determine "whether the 'presumption of service [can be] satisfactorily rebutted.' "

{¶ 20} On December 28, 2020, Mother filed a motion to vacate the court's judgment awarding custody to Father due to lack of jurisdiction. Mother asserted that, because she could prove that she had not been served with the summons, the order granting Father legal custody of the minor children was void in that the Court lacked personal jurisdiction over her.

{¶ 21} Mother's affidavit, which was attached to her motion, stated in part:

6. On April 20, 2019, I was living in an undisclosed location;

7. On April 20, 2019, I was not living with any relative or family member;

8. I do not currently reside at 770 St. Nicholas Avenue, New York, New York 10031, nor have I ever resided there;

9. To the best of my knowledge and belief, I do not currently have relatives and/or family members who reside at 770 St. Nicholas Avenue New York,

New York 10031, nor have I ever had relatives and/or family members who resided there;

10. I do not know anyone by the name of Renell Davis nor have I ever encountered and/or spoken with an individual by the name of Renell Davis to the best of my knowledge and belief;

11. I was not approached by any individual with Court or other documents on or about April 20, 2019, at any time;

12. I was not approached by an individual asking for my identity or bearing a picture of me or my likeness on April 20, 2019, at any time;

13 I was not served with Summons on April 20, 2019 at 1:18 PM at 770 St. Nicholas Ave., New York, New York 10031, or on any other date or at any other time or location;

I4. I learned of the present proceedings on August 19, 2019 at a court appearance in New York during the course of the custody action and petition for an order of protection that I initiated in the Family Court of New York in June 2019;

15. Petitioner/Father was served with my petitions and was represented by counsel at this August 19, 2019 New York court appearance who notified the Court of the Ohio action;

16. I was assigned an attorney on August 19, 2019, and once I met with her, she immediately took action to help me retain counsel in Ohio to address the lack of service;

17. I was never served with Summons in the present case; and

18.   I had no knowledge of the proceedings occurring in this Court until after the conclusions of the trial held July 30, 2019.

**{¶ 22}** The trial court held a hearing on February 10, 2021.   Robert Givens, who owned L&T Attorney Support Services in Stanford, Connecticut, testified that he was retained by Father to serve Mother.   He identified a February 3, 2021 correspondence to counsel for Mother, prepared by "Sidney Lopez," a temporary employee, at his direction (Exhibit A); Exhibit A stated:

RE: Subpoena Information Request

1)  Amended Motion for Custody and Motion for Continuance was received in March 2019
    Job was completed once the respondent was served.

2)  There are no written contracts

3)  Server was provided the area and location of service by the Petitioner

4)  There was no investigation necessary only service was requested.

**{¶ 23}** Javonne Gamble, who worked at a domestic violence shelter in a confidential location in New York, New York, in the county of the Bronx, testified that in April 2019, he was Mother's case manager at the shelter.   Gamble stated that the shelter was in no way associated with 770 Saint Nicholas Avenue in New York.   He stated that the Saint Nicholas address was in Manhattan.   Gamble stated that shelter residents were required to spend the night at the shelter each night and that Mother did not violate this rule.   On cross-examination, Gamble stated that shelter residents are permitted to leave the shelter during the day.

**{¶ 24}** Mother testified via an interpreter that in April 2019, she was "[n]ever" approached by someone with legal papers, and that she was not aware that there was a

pending custody case in Ohio. Mother stated that she was not familiar with the 770 Saint Nicholas Avenue address, and that in April 2019, she resided in Bronx County. Mother identified copies of Google Earth photos of the Saint Nicholas address that were emailed to her by counsel (Exhibit B), and she stated she was sure she'd never been there.

{¶ 25} On cross-examination, Mother stated that she did not have any friends in Manhattan; she also denied that Father had previously dropped her off in Manhattan to visit friends there. Mother stated that neither she nor her children consulted with any Manhattan doctors in 2019, but she did have a post office box in Manhattan in 2019. When asked for the distance between the post office and the Saint Nicholas address, Mother responded that she did not know because the shelter picked up the mail; she never picked up her own mail. Mother denied having any medication called in to any Manhattan pharmacy.

{¶ 26} Renell Davis testified that he was employed at L&T Attorney Support Services in April 2019 and was assigned the task of serving Mother with a summons, an amended motion for custody, and a motion for a continuance on April 20, 2019. He stated that Mother "was my first, very, very, very first service." Davis stated that Father provided a photo of Mother, and Davis familiarized himself with it. He identified Mother as the individual in the photo provided to him. Davis stated that Father had provided a list of addresses and neighborhoods for him to search. He stated that there were four previous unsuccessful attempts at service by someone other than him. Davis stated that on April 20, 2019, he arrived at the Saint Nicholas address around noon, and after about an hour and a half, he observed Mother walking toward him and recognized her from the picture. He testified on direct examination:

Q. Was she inside or outside the building?

A. Outside.

Q. Was she walking, uh, down the street or headed into a building; do you recall, sir?

A. I really don't recall because it was a long time ago, but I - - I remember her walking towards me and I was walking towards her. And I just - - I was on my phone and I looked up and there she was - - not there she was, but she was coming up the block.

Q. What did you say to her first?

A. I just came right out, "Are you [Mother]?"

Q. And what was her response?

A. She didn't really have one until I showed her the picture.

Q. What picture did you show her?

A. I showed her two separate pictures of one with her and one with her and the kids.

Q. What, if anything, did she say to you when you showed her the pictures?

A. She didn't really say much until I showed her the picture, but when I showed her the picture she said (unintelligible) and I gave her the document.

Q. She speak to you in English, sir?

A. Yes.

THE COURT: So - - excuse me, * * * I think I missed something.

Sir, did you say you showed her two pictures - -

THE WITNESS:   Mm-hm.

THE COURT:    - - and she said back to you in English, "What is this"?

THE WITNESS:   Not "What is this."   But she was more startled than anything.

THE COURT:   Okay.   And then you gave her the papers and you walked away?

THE WITNESS:   I only gave the - - only gave the documents when I - - when I showed her the picture.   She was kinda shaken by how I got the pictures, so that's why I gave her the documents.

* * *

BY [COUNSEL FOR FATHER]:

Q.   Did she say anything else to you, sir?

A.   No.   Because at that point - - I was taught that you - - you being served [sic].   So I didn't really give her a chance to say anything because I didn't want to, you know, run back at me or attack me for giving her papers, so I just left the facility.

* * *

Q.   Did she take the service papers from you, sir?

[COUNSEL FOR MOTHER]:   Objection; leading.

THE COURT:   I'll overrule that objection.   The fact that a woman took the papers doesn't mean who that woman was.

* * *

BY [COUNSEL FOR FATHER]:

Q. Sir, is there any doubt in your mind that the lady in the picture was that [sic] you served is the lady who's on the screen today, [Mother]?

A. Yes.

* * *

BY [COUNSEL FOR FATHER]:

Q. Sir, did you sign an Affidavit of Service as filed with this court on April 29, 2019, that you served these documents * * * on [Mother]?

A. Yes.

Tr. 53-57.

{¶ 27} The following exchange occurred on cross-examination:

Q. Do you have, sir, in your possession, or are you able to look at Defendant's Exhibit A, page 2? This is the Affidavit you're alleging that you signed relating to this case.

A. Yes.

* * *

Q. * * * You indicated in your testimony, your direct testimony, that you showed her the picture, it startled her. She said, What is this? You handed her the paper and then you walked away. Is that accurate?

A. Yes.

* * *

Q. In your Affidavit you stated that you asked the recipient whether she was in active military service, but that is not consistent with the

testimony you just provided us, * * * is that correct?

A. Yes.

* * *

Q. And you don't speak Spanish?

A. No.

Q. * * * And you were never given an apartment number or any specific suite number of this address; is that correct?

A. No.

Q. And the building is a very large apartment building; is that correct?

A. Yes.

Tr. 59-61.

{¶ 28} Father testified that he provided the Saint Nicholas address to L&T Attorney Support Services because, in 2016, the family vacationed in New York twice, visiting friends and family, one of Mother's best friends lived in the area, and Mother had given him the address "to put it in my GPS in * * * my phone." He also said that a CVS pharmacy down the street from the Saint Nicholas address had his number and called him for medicines that his children got. Father stated that he provided eight addresses, and six of them were very close to that neighborhood.

{¶ 29} In its decision, the juvenile court noted that Mother's initial filing had asserted that the juvenile court lacked jurisdiction and that she had not waived the issue of personal jurisdiction. The court noted that Mother's motion fell under Civ.R. 60(B)(5), such that the time limits under Civ.R. 60(B)(1),(2), and (3), did not apply. The court found

that Mother's motion was "both appropriate and timely."

{¶ 30} The court further found:

Based on both an objective analysis of the totality of the circumstances surrounding the events of April 20, 2019, and the testimony provided at the hearing, the Court finds that Mother has met her burden to refute the presumption of service and has proven a failure of service. Mother's credible testimony and evidence shows that she was not present as 770 St. Nicholas Avenue, New York, NY 10031 the day that she was purportedly served with Father's *Amended Motion for Custody* and *Motion for Continuance.*

While Father presented evidence to support the assertion that Mr. Davis successfully served Mother, the Court does not find this evidence credible. Mr. Davis testified that he served Mother consistent with the terms asserted in his *Affidavit of Service.* However, Mr. Davis admitted at the hearing that he did not ask the recipient whether she was in active military service at the time of the purported service. This admission contradicts the averments contained in Mr. Davis's affidavit. Therefore, the Court finds that his testimony lacks credibility.

Further, the Court finds that the facts surrounding the purported service also lack credibility. Mr. Davis testified that the service attempt in question was his very first service. Yet, he testified that after less than two hours, on a street in New York City, Mr. Davis happened to look up from his phone, at the exact right moment to find Mother, the intended recipient of

his court documents, walking towards him. Based on the reliability of this witness and the facts surrounding the purported service, the Court does not find this testimony credible.

{¶ 31} The court granted Mother's motion and vacated its October 4, 2019 order granting Father legal custody of the children.

{¶ 32} Father appeals, raising one assignment of error:

THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO VACATE THE MAGISTRATE'S DECISION AND JUDGE'S ORDER ENTERED ON OCTOBER 4, 2019.

{¶ 33} Father asserts that Mother was properly served pursuant to Civ.R. 4.1 and "clearly lied in her self-serving testimony in an effort to rebut the presumption of proper service." Father asserts that the juvenile court vacated its prior order solely based on Mother's self-serving testimony that she was not personally served, "despite overwhelming evidence to the contrary." According to Father, the evidence that four unsuccessful attempts at service had occurred before Davis was successful on his first attempt "was completely ignored," and when Father's counsel attempted to question another process server about those attempts, the trial judge "outright stated that it did not matter 'that they attempted service four times' because it did not have anything to do with the actual date of service." Father asserts that the juvenile court "apparently took into consideration that this happened to be the 'very first attempt' by the process server, as if there is some significance to that suddenly."

{¶ 34} Father asserts that the juvenile court seemed to put to burden of proving proper service on him, rather than placing the burden on Mother to prove that service was

irregular, as required. According to Father, while Mother claimed she had never been to Manhattan for any reason, she conceded that she had a P.O. box there; she also acknowledged using CVS to fill prescriptions for her children. Father argues that he provided testimony that some of the CVSs were located in Manhattan and that they would contact him about picking up prescription for the children. Father also points to his testimony that Mother's friend still lived in the area where service was made.

{¶ 35} Finally, Father asserts that the juvenile court ignored the inconsistencies in Mother's testimony when it characterizing her testimony as credible, notwithstanding that it was self-serving, and focused only the "details about the service itself." According to Father, the trial court's finding that Mother was credible notwithstanding the inconsistencies in her testimony was an abuse of discretion.

{¶ 36} Mother responds that a judgment rendered without proper service is "a nullity and is void," and that the authority to vacate a void judgment is not derived from Civ.R. 60(B). She argues that she offered sufficient competent and credible evidence to rebut the presumption that she had been personally served with Father's amended motion for custody and motion to continue on April 20, 2019, and that the juvenile court's decision was supported by the evidence. Mother also argues that Defendant's Exhibit A indicates on the first page that the process server "received the documents to be filed *prior to the documents being filed with the Court.*"

{¶ 37} Additionally, Mother argues that testimony from the shelter worker established that, if she were living in a shelter, she was not residing at the address where she was allegedly served, because there were no shelter-based programs associated with that address. Further, Mother argues that the juvenile court's credibility

determinations concerning Rennell Davis were sound because he testified that the affidavit he signed and submitted to comport with Civ.R. 4.1(B) included untrue assertions, including that he had asked if she was in the military. Mother asserts that it was reasonable and within the juvenile court's discretion for it to conclude that Davis lacked credibility. Mother further asserted that the court was within it discretion to conclude that it was unlikely that a brand-new process server in his first few hours on the job would have successfully served Mother at an address where she did not live, work, or frequent and where others had tried unsuccessfully to serve her on four other occasions.

{¶ 38} Mother argues that the juvenile court properly considered the four prior attempts at service as supporting Mother's position that she was never served rather than Father's position that the court improperly "ignored" the prior attempts at service, because the "alleged service address" had no connection to her, and the juvenile court had "discretion to make credibility determinations based on the testimony and circumstances." Mother asserts that her testimony that she did not frequent Manhattan was consistent with her testimony that she did not go to her P.O. box in Manhattan because the shelter picked up the mail.

{¶ 39} Finally, with respect to the CVS pharmacy, Mother points out that, although Father believed the questioning about the pharmacy was relevant to the parties' credibility, the trial court did not have to agree, and although the court sustained one objection about the relevance of an email about a prescription for one of the children, it did not otherwise limit such questioning.

{¶ 40} The Fifth District has stated:

Ohio law clearly provides that a judgment rendered without personal jurisdiction over a defendant is void ab initio rather than voidable. See *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941 and *CompuServe, Inc. v. Trionfo* (1993), 91 Ohio App.3d 157, 161, 631 N.E.2d 1120. Accordingly, a judgment rendered without proper service is a nullity and is void. *Lincoln Tavern, Inc. v. Snader* (1956), 165 Ohio St. 61, 64, 133 N.E.2d 606. The authority to vacate a void judgment is not derived from Civ. R. 60(B), "but rather constitutes an inherent power possessed by Ohio courts." *Patton,* supra, paragraph four of the syllabus. To be entitled to relief from a void judgment, a movant need not present a meritorious defense or show that the motion was timely filed under Civ. R. 60(B). *Id.*

*Thompson v. Bayer*, 5th Dist. Fairfield No. 2011-CA-7, 2011-Ohio-5897, ¶ 16.

**{¶ 41}** The plaintiff bears the burden of obtaining proper service on a defendant. *Johnson v. Johnson*, 2d Dist. Greene No. 2020-CA-7, 2020-Ohio-5275, ¶ 15, citing *Cincinnati Ins. Co. v. Emge*, 124 Ohio App.3d 61, 63, 705 N.E.2d 408 (1st Dist.1997).

Service of process must be " 'reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond.' " *Akron-Canton Regional Airport Auth. v. Swinehart*, 62 Ohio St.2d 403, 406, 406 N.E.2d 811 (1980), quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Where the plaintiff follows the Ohio rules governing service of process, courts presume that service is proper, unless the defendant rebuts this presumption with sufficient evidence of nonservice. *Mitchell v.*

*Babickas*, 8th Dist. Cuyahoga No. 105294, 2018-Ohio-383, ¶ 10, citing *McWilliams v. Schumacher*, 8th Dist. Cuyahoga Nos. 98188, 98288, 98390, 98423, 2013-Ohio-29, ¶ 49-50. To rebut the presumption of proper service, the defendant must produce "evidentiary-quality information" that demonstrates he or she did not receive service. *Mitchell* at ¶ 10, citing *Thompson v. Bayer*, 5th Dist. Fairfield No. 2011-CA-00007, 2011-Ohio-5897, ¶ 23. This evidence must be uncontradicted. *Rafalski v. Oates*, 17 Ohio App.3d 65, 66, 477 N.E.2d 1212 (8th Dist.1984). "It is reversible error for a trial court to disregard unchallenged testimony that a person did not receive service." *Id.*

*Johnson* at ¶ 15-16.

{¶ 42} A trial court's determination of whether service was completed will not be disturbed absent an abuse of discretion. *Thompson* at ¶ 27, citing *Ramirez v. Shagawat,* 8th Dist. Cuyahoga No. 85148, 2005-Ohio-3159. "An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude." *Id.*, citing *State ex rel. Grady v. State Emp. Relations Bd.,* 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

{¶ 43} It is well-settled that "credibility determinations are particularly within the province of the trial court," and we defer to the juvenile court's assessment of credibility. *See Ohio Civ. Rights Comm. v. First Am. Properties, Inc.,* 113 Ohio App.3d 233, 239, 680 N.E.2d 725 (2d Dist.1996). The juvenile court made clear that it found Davis not to be credible and Mother to be credible. In *First Am. Properties*, a pregnancy discrimination case, we held that evidence adduced at a hearing was sufficient to support finding that the president of First American Properties was not credible when he testified that he never

received service of process, where the Ohio Civil Rights Commission "presented evidence that service of process was sent by certified mail to [the president's] residence and that someone at the residence signed for it." *Id.* In contrast, in this case, Mother asserts that the alleged service address had no connection to her, and no connection was otherwise established.

{¶ 44} As noted above, by his own admission, Davis was not truthful in his affidavit of service when he indicated that he had asked Mother about her military service. In other words, Davis acknowledged that the document giving rise to the presumption of service was inaccurate. The court further found that the "facts surrounding the purported service also lacked credibility." Father stated that he provided eight addresses to search for Mother because he and Mother had been to New York twice for vacation. The only time period he mentioned being there was in 2016. The court specifically found Davis's testimony lacking in credibility insofar as he said that, in the course of his first attempt at service (a fact that Davis himself emphasized), and in less than two hours, he had spotted Mother walking toward him in one of the eight locations she had allegedly been to in the past while in New York. Mother was adamant that she had never been served by Davis and had never been to the Saint Nicholas address. The juvenile court reasonably credited Mother's testimony.

{¶ 45} Based upon the foregoing, we see no abuse of discretion, and Father's assigned error is overruled.

{¶ 46} The judgment of the juvenile court is affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.


Copies sent to:

John (Hui) Li
Sarvani P. Nicolosi
Cara J. Williams
Hon. Anthony Capizzi